UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **CHARLES JOHNSON** | **CASE NO. 6:17-CV-01656** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **CABOT CORPORATION** | **MAGISTRATE JUDGE HANNA** |

### MEMORANDUM RULING

Before the Court in this employment discrimination suit is a motion for summary judgment filed by Defendant Cabot Corporation ("Cabot"). [Doc. No. 21]. Pursuant to its motion, Cabot seeks dismissal of Plaintiff Charles Johnson's claim of race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. For the reasons that follow, the motion is GRANTED.

### I.
### BACKGROUND

Charles Johnson, an African American male, was hired by Cabot on March 21, 2011 as a warehouse technician at Cabot's carbon black facility in Franklin, Louisiana. [Doc. No. 26-1 at ¶¶ 1-2]. Johnson continued in that position until his termination on August 12, 2015. *Id.* at ¶ 2. Johnson's duties included packing and bulk loading carbon black into railcars and hopper trucks. *Id.* at ¶ 3. In order to load the carbon black into the railcars, Johnson had to climb on top of a railcar, open a spout located on the top of the railcar and pour the carbon black through the spout.

At the time of Johnson's termination, Cabot had implemented a Fall Protection Procedure, which required all employees working on top of railcars to wear fall protection gear at all times. The fall protection gear included a harness, which was tethered to a guidewire running above the railcars. *Id.* at ¶¶ 7-8; Doc. No. 21-4 at ¶ 15. Cabot trained its warehouse technicians, including

Johnson, to comply with the Fall Protection Procedure. [Doc. No. 26-1 at ¶¶ 9-10]. Cabot stored extra fall protection gear at its facility to ensure employees were always able to comply with the Fall Protection Policy. *Id.* at ¶ 15. The Employee Disciplinary Policy in effect during the relevant time period identified the "flagrant or intentional violation" of Cabot's Fall Protection Procedure as "misconduct which may result in immediate termination." [Doc. No. 21-4 at 22-23 (emphasis omitted)]. Johnson was made aware of Cabot's Disciplinary Policy from the beginning of his employment, and he testified he knew that a violation of the Fall Protection Procedure could result in termination. [Doc. No. 26-1 at ¶¶ 13-14].

At some point in time prior to August 5, 2015, Cabot installed hidden cameras around its warehouse at the plant. [Doc. No. 21-5 at ¶ 11]. On August 5, 2015, Jonathan Granger, Cabot's Technical Manager of Plant and Warehouse, observed misconduct in violation of protocol in all areas of the warehouse while reviewing footage from the video cameras. [Doc. No. 26-1 at ¶¶ 16-17; Doc. No. 21-7 at ¶ 12]. In addition to numerous minor violations, Granger saw three African American employees, including Johnson, in violation of the Fall Protection Procedure. [Doc. No. 26-1 at ¶ 18]. That same day, Granger reported the violations to the Facility General Manager, Steve Hubertus. *Id.* at ¶ 21. Hubertus directed Granger and Hugh Junca, a Cabot Warehouse Supervisor, to personally verify the conduct.[1] *Id.* at ¶ 22. That same evening, Granger and Junca walked to the railcar dock to inspect fall protection compliance and personally observed Johnson loading railcars without fall protection. *Id.* at ¶ 25; Doc. No. 21-6 at ¶ 7; Doc. No. 21-7 at ¶ 15. At the time of the inspection, Johnson was the only employee in the railcar dock who was observed not wearing fall protection gear. [Doc. No. 26-1 at ¶ 27]. Junca and Granger instructed Johnson to

---

[1] Because Cabot had not negotiated the decision to install hidden cameras with the Union representing its employees, it was of the opinion such evidence could not be used to impose employee discipline. *Id.* at ¶¶ 23-24.

climb down from the top of the railcar and go to the office to discuss why he was not wearing fall protection gear. *Id.* at ¶ 28. Johnson was unable to satisfactorily explain why he was not wearing his gear. *Id.* at ¶ 29. In light of the violation, Johnson was instructed to go home pending an investigation into the incident. *Id.* at ¶ 30.

On August 6, 2015, Johnson was interviewed by Granger, Junca and Ruth Ortego, Human Resources Generalist for the plant, in the presence of a Union representative. *Id.* at ¶ 31; Doc. No. 21-5 at ¶ 16; Doc. No. 21-7 at ¶ 20. In the interview, Johnson admitted he was not wearing fall protection even though he was required to do so and had been trained with respect to same. *Id.* at ¶ 32. Johnson admitted he chose not to wear his fall protection gear without the knowledge of his supervisors. *Id.* at ¶ 33. When asked why he chose not to wear his fall protection gear, Johnson could not offer a satisfactory explanation. *Id.* at ¶ 34. Johnson was terminated on August 12, 2015, based on Defendant's finding he violated the Fall Protection Procedure. *Id.* at ¶ 36. Aside from the August 5, 2015 incident, Johnson had no other disciplinary violations during his employment with Cabot.[2] [Doc. No. 21-12 at 32-33].

On June 7, 2016, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 40. On September 26, 2017, the EEOC issued Johnson a Dismissal and Notice of Rights Letter. *Id.* at ¶ 41. Johnson timely filed the instant suit thereafter, asserting a claim of unlawful employment discrimination. [Doc. 21-1 at 5].

---

[2] The two other African American employees seen on video violating fall protection procedure on August 5, 2015 were not disciplined in any manner, as management did not personally observe their policy violations. [Doc. No. 26-1 at ¶ 36].

## II.
## APPLICABLE LAW

### A. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party). "Credibility determinations are not part of the summary judgment analysis." *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002). Rule 56 "mandates the entry of summary judgment . . . against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof." *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

### B. Title VII

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e–2(a). An employer's action will be found unlawful if the employee can demonstrate his race was a "motivating factor" for his firing, even if the employer was also motivated by other lawful factors. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing 42 U.S.C. § 2000e-2(m)). A plaintiff can prove a claim of unlawful discrimination by either direct or circumstantial evidence. Cases built on the latter, such as this one, are analyzed under the framework set forth in the seminal case of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See e.g. McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under that framework, the plaintiff must first establish a prima facie case of discrimination by showing: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he was discharged or subject to an adverse employment action by his employer; and (4) he was replaced by someone outside his protected class or was treated less favorably than other similarly situated employees outside of the protected group. *Id.*; *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512 (5th Cir.2001).

If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *McCoy* at 557. The employer's burden is only one of production, not persuasion, and involves no credibility

assessment. *Id.* If the employer meets this burden, the presumption of discrimination disappears, and the plaintiff must then either: (1) offer sufficient evidence to create a genuine issue of material fact that the employer's proffered reason is not true, but instead is a pretext for a discriminatory purpose (the pretext alternative), or (2) demonstrate defendant's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (the mixed-motive alternative). *Id.*; *Vaughn* at 636; *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

## III.
### ANALYSIS

#### A. Whether Johnson has met his prima facie burden

Cabot argues Johnson cannot satisfy the second and fourth elements of his prima facie burden. [Doc. No. 21-1 at 8, 9]. As to the second element, Cabot argues "[a]n employee is not 'qualified' for purposes of Title VII if he does not satisfactorily fulfill his job duties." *Id.* at 8-9 (citing *Dumas v. Christian Health Ministries*, 181 Fed.Appx. 433, 434 (5th Cir. 2006) and *Maldonado v. Mattress Direct, Inc.*, 2015 WL 1415735 (E.D.La. Mar. 27, 2015)). Because Johnson violated Cabot's Fall Protection Policy, Cabot contends he did not satisfactorily fulfill his job duties, thereby rendering him unqualified for the position of warehouse technician.

Cabot's reliance on *Dumas* and *Maldonado* is misplaced because these cases are distinguishable. In *Dumas*, the Fifth Circuit affirmed the district court's grant of summary judgment to the employer, finding the plaintiff failed to show she was qualified for the position for which she was hired. *Dumas* at 434. The Fifth Circuit reasoned: "A careful review of the record reveals Dumas was not qualified for the Nurse Coordinator position at the time she was hired. The undisputed evidence shows that she lacked the level of nursing experience required for her position, did not possess a graduate degree, and could not satisfactorily fulfill her job duties." *Id.*

Thus, in *Dumas*, the plaintiff, who worked for her employer for approximately two months, did not satisfy objective criteria for her position. In *Maldonado*, the district court, in dicta, suggested that the employee was not qualified for his position at the time of his termination due to the employee's misconduct (theft, leaving the store unattended, and employee and customer complaints). *Maldonado* at *1, *4. Nevertheless, it did not decide the issue, reasoning due to "further deficiencies in Plaintiff's *prima facie* case . . . , the Court may assume *arguendo* that he was qualified for the position in question without material impact on the resolution of the instant motion." *Id.* at *4.

In this matter, Cabot does not question whether Johnson had the skills to perform the job of warehouse technician; rather, it argues a single violation of Cabot's Employee Disciplinary Policy Guidelines rendered Johnson unqualified for his position for purposes of Title VII. Neither the parties nor the Court have identified any precedential Fifth Circuit jurisprudence addressing this element of Johnson's prima facie burden under similar facts. However, the Court is persuaded by the reasoning of other non-binding jurisprudence. *See Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1283 (7th Cir. 1977) ("The plaintiff need not show perfect performance or even average performance to satisfy this element. He need only show that his performance was of sufficient quality to merit continued employment, thereby raising an inference that some other factor was involved in the decision to discharge him."); *accord Person v. J.S. Aberici Const. Co., Inc.*, 640 F.2d 916, 919 (8th Cir. 1981); *Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) (to satisfy the second element a plaintiff need only show he or she possesses the basic skills necessary for performance of the job); *Mora v. Univ. of Miami*, 15 F.Supp.2d 1324, 1335 (S.D. Fla. 1998) ("An employee is qualified for a position if the employee's work was satisfactory prior to the date of the alleged adverse employment action."), *aff'd*, 189 F.3d 485 (11th Cir. 1999); *Franklin v. Crosby*

*Typesetting Co.*, 411 F.Supp. 1167, 1171 (N.D. Tex. 1976) (plaintiff satisfied the second element of his prima facie burden by showing "he held a job with the Defendant, and according to his testimony he performed his work within the normal qualifications required"). In this matter, the evidence in the record shows Johnson satisfactorily performed his job duties for over four years prior to his termination. This evidence is sufficient to establish the second element of Johnson's prima facie burden.

Cabot further contends Johnson cannot satisfy the fourth element of his prima facie burden, arguing "Plaintiff was actually replaced by a black employee, Marquis Clark, who was the first person hired after Plaintiff's termination." [Doc. No. 21-1 at 15]. Defendant supports its position with the declaration of Linda Peloquin, Cabot's Human Resources Manager, who attests, "Mr. Robicheaux was hired on May 12, 2014, over a year before Mr. Johnson was terminated in August 2015." Doc. No. 21-14 at ¶¶ 3, 7. She continues, "The first person hired after Mr. Johnson's termination was Marquis Clark, who is African American." *Id.* at ¶ 8. According to Johnson, following his termination he was replaced by Dane Robichaux, a white male. [Doc. No. 26 at 9-10]. Johnson supports this assertion with the testimony of Drake Daigle, an employee of Cabot. [Doc. No. 26-3 at 47-48]. To satisfy the fourth element of his prima facie burden, Johnson must show he was replaced by someone outside of his protected class, or that others similarly situated were treated more favorably. *Okoye* at 512; *see also Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. 1982). Thus, the relevant issue before the Court is who replaced Johnson, and not who was the next person hired by Cabot following Johnson's termination. As Johnson has presented evidence showing he was replaced by a white employee, the Court finds Johnson has satisfied the fourth element of his prima facie burden. Accordingly, the Court turns to whether Cabot has proffered a legitimate, non-discriminatory reason for firing Johnson. *Vaughn* at 636.

**B.  Whether Cabot has proffered a legitimate, non-discriminatory reason for Johnson's termination**

As Johnson has satisfied his prima facie burden, Cabot must proffer a legitimate, non-discriminatory reason for firing Johnson. *Vaghn* at 636. Again, this is a burden of production, not persuasion. *Id.*; *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons. . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.") To meet its burden, Cabot "must clearly set forth, through the introduction of admissible evidence, the reasons for [Johnson's firing]." *Vaughn* at 636 (quoting *Burdine* at 256). "[Cabot] is allowed to be incorrect in its assessment of the facts it relies on to justify firing [Johnson], but it is not allowed to have any discriminatory animus against [him] in making its decision." *Vaghn* at 636.

Cabot addresses its burden by submitting uncontroverted evidence that Johnson admitted he violated Cabot's Fall Protection Policy. [Doc. 26-1 at ¶¶ 29, 32-34 (and supporting evidence cited therein)]. Cabot further notes it is undisputed that Johnson "received training and was made familiar with the Fall Protection Procedure," and was also aware violating the Fall Protection Procedure could result in termination. *Id.* at ¶¶ 9-10, 14. Cabot concludes, because Johnson "was intentionally non-compliant, termination was reasonable in light of Defendant's policies." [Doc. No. 21-1 at 17]. Cabot's stated non-discriminatory reason for Johnson's termination is sufficient to meet its burden of production.

**C.  Whether Johnson has shown a factual issue exists with regard to Cabot's proffered reason for his termination**

As Cabot has produced a legitimate, non-discriminatory reason for firing Johnson, the burden shifts to Johnson to point to evidence refuting or contesting Cabot's proffered explanation.

*Oklye*, 245 F.3d at 513; *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 236-37 (5th Cir. 2016). Johnson attempts to do so by relying on a disparate treatment theory, arguing "Cabot has consistently retained Caucasians who violated [its] policies and discharged African-Americans." [Doc. No. 26 at 4; *see also Id.* at 11-13]. "Disparate treatment occurs where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct." *Vaghn* at 637 (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009); *see also Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 892-93 (5th Cir. 2012) (In work-rule violation cases, a plaintiff can demonstrate disparate treatment by showing that employees outside of his protected class who engaged in similar acts were not punished similarly). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Lee* at 260 (footnotes omitted). "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions," because "[i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis." *Lee* at 260 (internal quotation marks omitted); *see also Turner* at 893.

The Fifth Circuit has made clear however that "nearly identical" is not synonymous with "identical." *Lee* at 260; *Turner* at 893. The Fifth Circuit has provided the following guidance on the "nearly identical" standard:

> Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near

> identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical. For example, it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor. Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable. As the Supreme Court has instructed, the similitude of employee violations may turn on the "comparable seriousness" of the offenses for which discipline was meted out and not necessarily on how a company codes an infraction under its rules and regulations. Otherwise, an employer could avoid liability for discriminatory practices simply by coding one employee's violation differently from another's.

*Lee* at 260-61 (footnotes omitted). In support of his disparate treatment theory, Johnson argues:

> For example, Kenny Blanchard (Caucasian) violated the lockout-tagout policy but was not discharged for his violation. Dwayne Zeringue, a Caucasian working at the Cabot plant, intentionally broke a major violation by entering the railyard during a train switch, but was not terminated. Drake Daigle, also a Caucasian, admitted to violating the same fall protection policy in front of his supervisor, Manny Mendoza (a Caucasian) but was not terminated for this violation. Tim Hebert, another Caucasian employee, was found to be in violation of the insubordination policy but was not terminated for that violation.
>
> African-American employees, on the other hand, received no such favorable treatment from Cabot. Mr. Johnson was immediately terminated for a policy violation. Two African-American employees, Travis Williams and Ananise White were immediately terminated for falsifying time records. Lastly, Melvin Jones, an African-American, was immediately terminated for being in the railyard at the wrong time, a violation strikingly similar to that of Mr. Zeringue.

[Doc. No. at 4-5 (footnotes omitted)].

The Court finds Johnson has not identified an appropriate comparator. Kenny Blanchard, an Operator for Cabot, was issued a written warning for *unintentionally* violating Cabot's "lockout tagout" procedure, due to his failure to lockout his machine following an emergency situation.[3]

---

[3] According to the undisputed evidence in the record, Blanchard is a designated First Responder for Cabot's plant. [Doc. No. 21-10 at ¶ 6; Doc. No. 21-12 at 66]. On the day of his violation, as he was about to begin work, Blanchard received a first responder call advising that someone in the plant had been injured, and Blanchard needed to report to the scene immediately. When Blanchard returned to his work station, the Safety Director asked why he had not placed locks on the conveyor before beginning his work. Blanchard explained he had been distracted by the first responder call and had forgotten to follow the lockout procedure. Blanchard was subsequently issued a written warning and was advised by management that but

[Doc. No. 26-1 at ¶¶ 58, 62-64]. Dwayne Zeringue is not similarly situated to Plaintiff, because he was a contractor and not an employee of Cabot.[4] [Doc. No. 26-1 at ¶ 68]. The Court finds Tim Hebert does not have a comparable violation history to Johnson, as Hebert's discipline (a written warning) was imposed for "insubordination." No showing has been made that the conduct surrounding Hebert's incident involving insubordination was of comparable seriousness to that of Johnson's violation of a safety procedure. [Doc. No. 26-5 at 10, 49-50]. Finally, Drake Daigle is not an appropriate comparator, because his violation was not of "comparable seriousness" to Johnson's violation. *Lee* at 261. Daigle testified that on one occasion, while using his fall protection equipment, he unhooked the lanyard connecting his harness to the guidewire, because he had become tangled in the tether. [Doc. 26-1 at ¶ 66; Doc. 26-3 at 38]. Daigle testified he was disconnected from the guidewire for approximately one minute. [Doc. 26-3 at 56]. He further testified while not certain, he believes his supervisor saw the violation but did not cite or report him for the violation. *Id.* at 38-39, 57-59. Daigle testified that he reattached the tether within seconds after seeing his supervisor approach. *Id.* at 57. Unlike Daigle, who only untethered his equipment for approximately one minute while he untangled the tether, Johnson intentionally chose to violate Cabot's Fall Protection Policy and was found working atop a railcar with no fall protection equipment whatsoever. The Court finds this distinction makes Daigle an improper comparator, because the violations are not of comparable seriousness.

---

for the First Responder call, he would have been terminated. [Doc. 21-10 at ¶¶ 6-17; Doc. 21-12 at 66-69; see also Doc. 26-1 at ¶¶ 63-64].

[4] Zeringue was responsible for overseeing other contract workers. [Doc. No. 26-1 at ¶ 68]. One day, Zeringue heard the alarm in the railyard going off, indicating that there was about to be a train switch. Zeringue wanted to make sure that the contract workers he was supervising did not come down from the silos on which they were working during the train switch. He tried calling the workers on the radio and by telephone, without success. To ensure the workers' safety, Zeringue went out to the rail area to notify them of the train switch. [Doc. No. 26-1 at ¶¶ 69-72].

In sum, Johnson has not produced evidence of any Cabot employee who was treated more favorably for "nearly identical" conduct. As a result, Johnson has failed to carry his burden by pointing to evidence showing that Cabot's reason for his termination constituted pretext for racial discrimination. Accordingly, summary judgment in favor of Cabot is warranted.

## IV.
### CONCLUSION

For the reasons set forth above, the motion for summary judgment [Doc. No. 21] filed by Defendant Cabot Corporation is GRANTED.

THUS DONE in Chambers on this 19th day of February, 2019.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE